# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| BARBARA LAWRENCE, | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-1793-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION

Pursuant to the parties' consent to proceed before the magistrate judge (Doc. 19), this

case has been transferred to the undersigned for final ruling. For the reasons discussed herein,

Plaintiff's *Motion for Summary Judgment* (Doc. 17) is **DENIED**, Defendant's *Motion for*

*Summary Judgment* (Doc. 20) is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND[1]

### A.      Procedural History

Barbara Lawrence seeks judicial review of a final decision by the Commissioner of Social

Security (Commissioner) denying her claim for Supplemental Security Income (SSI) and

Disability Insurance Benefits (DIB) under the Social Security Act. In March 2008, Plaintiff filed

for SSI and DIB, claiming that she had been disabled since May 2006 due to coronary artery

disease (status post-angioplasty), hypertension, degenerative joint disease in both knees, obesity,

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

and carpal tunnel syndrome. (Tr. at 9, 140-50). Her application was denied initially and on

reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge

(ALJ). (Tr. at 95-99, 108). She personally appeared with counsel and testified at a hearing held

in June 2009. (Tr. at 21, 108). In September 2009, the ALJ found Plaintiff not disabled. (Tr. at

6-18). In July 2010, the Appeals Council denied Plaintiff's request for review, and the ALJ's

decision became the final decision of the Commissioner. (Tr. at 1-5). Plaintiff timely appealed

the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

## B.     Factual History

### 1.     Age, Education, and Work Experience

Plaintiff was 50 years old at the time of the administrative hearing and had an eleventh

grade education. (Tr. at 16, 22, 149). She had past relevant work experience as a certified

nurse's assistant. (Tr. at 16).

### 2.     Medical Evidence Before the ALJ

Plaintiff had a disability examination in July 2006, complaining of possible carpal tunnel

syndrome, leg pain, and hypertension. (Tr. at 292). Although she had pain and numbness in both

hands, she was able to complete her daily activities, and surgery had not been recommended.

Her leg pain was mainly in her knees and was worse in the right knee, her legs occasionally

"gave out" on her, and she used a walking stick intermittently. *Id*. Plaintiff was able to bend and

squat with discomfort, and she was on no medication for arthritis. *Id.* Although Plaintiff

reported that she could not afford her hypertension medication and was thus not taking any, her

blood pressure was not elevated and she did not have chest pain or shortness of breath, although

she complained of occasional dizziness. She mentioned that she had a coronary stent placed in

2

2002, and had to quit her job as a certified nursing assistant in 2005 because she could not lift patients. (Tr. at 292, 294). Plaintiff's grasp strength was intact, she had positive Tinel sign (tingling) in her right hand, a straight leg test was negative, and her gait and range of motion were normal.[2] (Tr. at 293).

In mid-January 2007, Plaintiff went to the emergency room complaining of shortness of breath and arm and leg pain. On neuromuscular exam, her range of motion was normal, she ambulated easily, and was discharged the same day after being assessed as having unexplained weakness. (Tr. at 334, 337).

In late January 2007, Plaintiff went to the emergency room complaining of arm and chest pain and shortness of breath. (Tr. at 298). An echocardiogram revealed that she had mild concentric left ventricular hypertrophy (increase in size of the left heart ventricle) and mild left atrial dilation, but the other findings were normal. (Tr. at 300, 325). The doctor noted that Plaintiff had been experiencing dyspnea (shortness of breath) on exertion with fatigue brought on by physical activity, at times her legs felt very weak, and she had random sharp chest pains and discomfort involving her left arm. (Tr. at 318). He assessed her as having hypertension, hypercholesterolemia (high blood cholesterol), nonspecific chest and left arm pain, and nonspecific chronic fatigue. (Tr. at 320). The doctor asked Plaintiff to return for a follow up appointment in four months. (*Id.*). A January 2007 chest x-ray was normal. (Tr. at 330).

In February 2007, Plaintiff returned to the hospital, where it was noted that her hypertension was well-controlled, she had intermittent chest pain, and carpal tunnel syndrome,

---

[2] All medical terms were defined with reference to *Stedman's Medical Dictionary* (27th ed), available on Westlaw.

although she was noncompliant with wearing her wrist brace because it was not effective. (Tr. at 302-04). In March 2007, an examining disability physician found that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand, walk and sit about six hours in an eight-hour workday, and had no postural or manipulative limitations. (Tr. at 310-12). He concluded that her alleged limitations were not totally supported by the record evidence. (Tr. at 314).

In February 2008, Plaintiff returned to the hospital with abdominal pain and was diagnosed with acute pancreatitis (inflammation of the pancreas) and cholelithiasis (presence of concretions in the gallbladder or bile ducts). (Tr. at 347). She underwent a laparascopic cholecystectomy (removal of the gallbladder) and was discharged after a week. (Tr. at 348). During her hospitalization, it was noted that Plaintiff complained of pain in her lower extremities, shoulder, head, and neck and continuously asked for pain medication. (Tr. at 348).

Plaintiff had an MRI of her left knee in April 2008 due to joint pain after a fall, which revealed marked chondromalacia (softening of the cartilage) involving the medial facet of the patella and edema within the posterior aspect of the tibial plateau and the medial portion of the patella. She also had subchondral cysts (beneath or below the cartilage of the ribs). (Tr. at 354, 374). A medical examination in May 2008 revealed that Plaintiff had 120-degree range of motion in her right knee, 110-degree range of motion in her left knee, and no instability in her knees, although she did have moderate crepitus (noise or vibration produced by rubbing bone or cartilage surfaces together). Further, Plaintiff had a normal chest x-ray and electrocardiogram, and normal grip strength in her hands despite complaining of numbness and pain. The examining doctor noted that the chondromalacia documented in her MRI report did represent

some impairment in Plaintiff's ability to stand and walk for extended periods and to kneel and squat, but the impairment was not substantial. (Tr. at 357-58).

A separate Residual Functional Capacity (RFC) questionnaire completed in May 2008 assessed Plaintiff as being able to occasionally lift 20 pounds, frequently lift 10 pounds, and stand and sit six hours in an eight-hour workday, and as having the unlimited ability to climb, crawl, stoop, and kneel, and manipulate using her hands. (Tr. at 360-62). In January 2009, Plaintiff went to a medical clinic complaining of pain in her lower back, knees, and arms and asking for more effective prescription pain medication because Vicodin was not working. (Tr. at 370). Plaintiff visited the emergency room after she suffered a minor closed head injury in March 2009 when her leg "gave out" and she fell back, hitting her head. (Tr. at 387).

### 3.      Hearing Testimony

At the hearing before the ALJ, Plaintiff testified that she had sharp chest pain once or twice a week, but the doctors could find nothing wrong. (Tr. at 30). She also stated that she had bilateral knee pain since 2006, which was worse on the left side, and sometimes her legs went out on her, causing her to fall several times while walking. (Tr. at 31). Plaintiff noted that she took only over-the-counter pain medication because she did not like the way the prescription medication made her feel. (Tr. at 33). She said that it did not matter whether she was sitting, walking or standing because her knee hurt her all the time, and she mostly laid down. (Tr. at 34).

Plaintiff stated that she spent her days lying in bed, watching TV, baking, and cleaning. (Tr. at 46-47). Her knee hurt all the time, but was worse if she walked upstairs, squatted, and walked for a long period of time, although she could walk for 90 minutes at a time, rest for two hours and walk for another 90 minutes. (Tr. at 49-50). Plaintiff said that she could not lift a

gallon of milk and carry it 100 feet because of her hand problems. (Tr. at 52-53).

A vocational expert testified that a person younger than age 50 who could do sedentary work and who had occasional postural limitations and could frequently use her hands could perform work as an operator, a charge account clerk, and an order clerk. (Tr. at 59). Further, she said that a person older than 50, who could do light work with occasional postural limitations and frequently use her hands could be a deli slicer, a cashier II, and a storage facility rental clerk. (Tr. at 60).

## C.    The ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of coronary artery disease (status post angioplasty), hypertension, left knee chondromalacia, obesity, and carpal tunnel syndrome, but did not have an impairment or combination thereof that met or exceeded one of the Listings. (Tr. at 12). The ALJ determined that Plaintiff had the RFC to perform light work in that she could lift and carry 10 pounds frequently and 20 pounds occasionally, her ability to sit, stand and walk was not compromised, she could occasionally climb, balance, stoop, kneel, crouch and crawl, and she could frequently use her hands for fingering and handling. (Tr. at 12). The ALJ accurately summarized Plaintiff's medical history, noting that she had multiple normal medical examinations and laboratory findings other than her knee MRI and x-ray, and mild heart problems. (Tr. at 12-13).

The ALJ noted that, in accordance with the requirements of SSR 96-6p, *et al.*, she had considered all of the medical opinion evidence in determining the extent to which Plaintiff's symptoms reasonably could be accepted as consistent with the objective medical evidence. (Tr. at 13). In doing so, she concluded that the substantial evidence failed to corroborate the degree

of impairments and associated restrictions and limitations alleged by Plaintiff. In particular, Plaintiff's progress notes showed that she had a history of inconsistent periods of seeking treatment for what she described as chronic, disabling impairments. (Tr. at 13). Further, she rarely used prescribed medication and the objective medical evidence, including numerous essentially normal tests, did not produce clinical findings consistent with the severity of her subjective complaints. (Tr. at 14-15). Additionally, the ALJ pointed out that there was no evidence in the record to suggest that Plaintiff had attempted to have her prescription medications adjusted to account for her allegedly severe side effects, which led the ALJ to believe that the side effects would not affect her ability to work. (Tr. at 15).

The ALJ also noted that Plaintiff's activities of daily living were somewhat contradictory of her alleged limitations in that she advised in one questionnaire that all of her activities were limited, but stated in others that her abilities to sit, lift, carry, read, and watch television were unlimited. (Tr. at 15). Next, the ALJ stated that her assessment of Plaintiff's RFC was well supported by the clinical record and she found Plaintiff's subjective complaints credible only to the extent they were consistent with the RFC finding. (Tr. at 16). The ALJ thus concluded that although Plaintiff could not perform her past relevant work as a nurse's aide, she could perform other work available in significant numbers in the national economy such as a call out operator, an order clerk, and a charge account clerk. (Tr. at 16-17).

## II. ANALYSIS

### A.    Legal Standards

#### 1.    Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the

Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The relevant law and regulations governing the determination of disability under the SSI program are identical to those governing the determination of eligibility under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985). Thus, the Court may rely on decisions in both areas, without distinction, in reviewing an ALJ's decision. Id. passim.

### 2.    Disability Determination

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Pursuant to 20 C.F.R. § 404.1520(d), if a claimant has an impairment which meets the duration requirement

and is listed in Appendix 1 or is equal to a listed impairment, the claimant is deemed disabled

without consideration of age, education, and work experience.

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant

is disabled:

1.  An individual who is working and engaging in substantial gainful activity
    will not be found disabled regardless of medical findings.

2.  An individual who does not have a "severe impairment" will not be found
    to be disabled.

3.  An individual who "meets or equals a listed impairment in Appendix 1" of
    the regulations will be considered disabled without consideration of
    vocational factors.

4.  If an individual is capable of performing the work he has done in the past,
    a finding of "not disabled" must be made.

5.  If an individual's impairment precludes him from performing his past
    work, other factors including age, education, past work experience, and
    residual functional capacity must be considered to determine if work can
    be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f),

416.920 (b-(f)).  Under the first four steps of the analysis, the burden of proof lies with the

claimant to prove disability.  *Leggett*, 67 F.3d at 564.  The analysis terminates if the

Commissioner determines at any point during the first four steps that the claimant is disabled or

is not disabled.  *Id.*  Once the claimant satisfies his or her burden under the first four steps, the

burden shifts to the Commissioner at step five to show that there is other gainful employment

available in the national economy that the claimant is capable of performing.  *Greenspan*, 38

F.3d at 236.  This burden may be satisfied either by expert vocational testimony or by reference

to the Medical-Vocational Guidelines of the regulations as long as the claimant either suffers

9

from only exertional impairments or his non-exertional impairments do not significantly affect

his RFC. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

B.     **Issue for Review**

**Whether the ALJ's RFC Finding is Supported by Substantial Evidence**

Plaintiff first contends that the ALJ's RFC finding is not supported by substantial

evidence because the ALJ minimized Plaintiff's knee problems by not fully describing the x-ray

and MRI findings from 2008. (Doc. 17 at 7-8). On a related note, Plaintiff argues that the ALJ

stated that Plaintiff had numerous normal test findings, when in fact her knee films revealed

marked problems. (*Id.* at 8). Further, Plaintiff maintains that it was not reasonable for the ALJ

to find that her ability to stand and walk at work was not compromised when she presented

objective evidence supporting her claim that she could not perform the standing and walking

requirements of light work and testified to such as well. (*Id.* at 9-10). Plaintiff also contends that

the ALJ's RFC finding was not based on substantial evidence because the state examining

doctors did not have Plaintiff's complete medical record, and the ALJ did not expressly state

what weight she gave to their opinions as required by SSR 96-6p. (*Id.* at 10-11). Further,

Plaintiff argues that the ALJ was under the false impression that there were no objective findings

to support Plaintiff's allegations of disabling pain, and thus the ALJ's credibility determination

was flawed. (*Id.* at 11-12). Finally, Plaintiff claims that the ALJ's reliance on purported

inconsistencies in Plaintiff's reported activities of daily living was faulty because Plaintiff

consistently stated that she was limited in standing and walking, which were the central activities

at issue for a light work finding. (*Id.* at 12-13).

The government responds that the ALJ accurately summarized the medical evidence,

including that Plaintiff had many essentially normal medical examinations, and properly found

that the objective medical evidence did not support Plaintiff's subjective complaints to the degree

alleged. (Doc. 21 at 5-10). Further, the government contends that the ALJ's RFC assessment

also is supported by the objective medical findings of the state examiner and consultant whose

opinions the ALJ stated she considered in accordance with SSR 96-6p. (*Id.* at 11-12). Finally,

the government maintains that the ALJ properly relied on inconsistencies in Plaintiff's reported

activities of daily living in which Plaintiff sometimes reported that her abilities to lift, carry, read

and watch television were unaffected by her disabilities, but at other times reported that those

abilities were affected. (*Id.* at 12).

**C.      Law Governing RFC Assessment**

The RFC is an assessment, based upon all of the relevant evidence, of a claimant's

remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a). The RFC is

considered by the ALJ, along with the claimant's age, education and work experience, in

determining whether the claimant can work. 20 C.F.R. § 404.1520(f). The ALJ has the sole

responsibility for evaluating a claimant's RFC based on the record as a whole. 20 C.F.R.

§ 404.1546(c). The ALJ makes the RFC determination by considering the claimant's ability to

lift, sit, stand, push, pull, walk, and the like. 20 C.F.R. §§ 404.1545(b), 416.945(b). A

determination of the claimant's RFC is made at both the fourth and fifth steps of the sequential

evaluation process. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). Light work involves lifting up

to 20 pounds and frequently lifting or carrying up to 10 pounds. A job also is in this category

when it requires a good deal of walking or standing, or when it involves sitting most of the time

with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

**D.     Legal Analysis**

Plaintiff's first argument, that the ALJ mischaracterized her medical records, is not

supported, because the record reveals that the ALJ accurately summarized Plaintiff's heart and

knee problems, but also accurately noted that her other medical examinations were essentially

normal. (Tr. at 12-13). Although Plaintiff argues that the ALJ unreasonably found her ability to

stand and walk uncompromised in light of the objective evidence, there was substantial evidence

in the record to support the ALJ's RFC finding in that Plaintiff had a negative straight leg raise

test, normal gait and range of motion, ambulated easily, and two doctors assessed her as being

able to work. (Tr. at 293, 310-14, 334, 337, 357-58). Plaintiff herself testified that she could

walk for 90 minutes at a time. (Tr. at 49-50). This Court cannot substitute its own judgment for

that of the ALJ because substantial evidence supports the ALJ's decision. *Greenspan*, 38 F.3d at

236. Further, despite Plaintiff's contentions, the ALJ expressly stated what weight she gave to

the state doctors' opinions as required by SSR 96-6p. (Tr. at 13).

There is also a dearth of evidence to support Plaintiff's argument that the ALJ

erroneously believed there were no objective findings to support Plaintiff's allegations of

disabling pain. This is clearly not the case where the ALJ accurately summarized a number of

objective test results, specifically an MRI and x-ray of Plaintiff's knee, which appears to be her

chief pain complaint. (Tr. at 12); *Greenspan*, 38 F.3d at 236. Finally, while Plaintiff contends

that the ALJ relied on meaningless inconsistencies in Plaintiff's reported activities of daily

living, any purported error is harmless because the ALJ also found, quite correctly, that (1)

Plaintiff's allegedly limited activity level could not be verified, and (2) even if her activities were

truly limited, it was difficult to attribute that to her medical condition in light of the weak

medical evidence.  (Tr. at 15).  Therefore, substantial evidence supports the ALJ's RFC

determination.  *Leggett*, 67 F.3d at 564.

### III.    CONCLUSION

For the foregoing reasons, the undersigned **DENIES** Plaintiff's *Motion for Summary*

*Judgment* (Doc. 17) and **GRANTS** Defendant's *Motion for Summary Judgment* (Doc. 20).  The

decision of the Commissioner is **AFFIRMED**.

**SO ORDERED** on March 31, 2011.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE